09-0553-cv
Chaya and Michael Ungar, et al. v. New York City Housing Authority

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 26th day of January, two thousand and ten.

Present:     AMALYA L. KEARSE,
             RALPH K. WINTER
             ROSEMARY S. POOLER,
                     Circuit Judges.

_____

CHAYA AND MICHAEL UNGAR, YITTY NIEMAN, FRIEDRICH AND REGINA WEISER, MOSHE DEUTSCH, ISAAC TELLER, SOLOMON WOLLNER, SHIA PINCHUS SCHWARTZ, IRENE ACKERMAN, YEHUDA STEIN, SOLOMON WERZBERGER, JOSHUA ADLER, CHAIM EIDLISZ, AZRIEL KATZ, MOSHE STERN, and ESTHER SCHWARTZ,[*]

                                    Plaintiffs-Appellants,

          -v-                                          No.     09-0553-cv

NEW YORK CITY HOUSING AUTHORITY,

                                    Defendant-Appellee.

_____

[*] The Clerk of the Court is directed to amend the official caption as set forth above.

Appearing for Appellants:     MICHAEL H. SUSSMAN, Sussman & Watkins, Goshen, New York.

Appearing for Appellee:       STEVEN J. RAPPAPORT, of counsel to Sonya M. Kaloyanides, Acting General Counsel, New York City Housing Authority, New York, New York.


Appeal from a judgment of the United States District Court for the Southern District of New York (Robert W. Sweet, Judge).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED**.

Plaintiffs-Appellants ("plaintiffs") appeal from a decision of the United States District Court for the Southern District of New York (Sweet, J.) granting summary judgment for defendant-appellee ("defendant"). Plaintiffs are seventeen orthodox Jews who allege defendant excludes them from public housing in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 et seq., and burdens their religious practice in violation of the Free Exercise Clause of the First Amendment by failing to exempt them from its Tenant Selection and Assignment Plan ("TSAP") based on religious hardship.

We review the decision below de novo, construing the evidence in the light most favorable to the non-moving party. World Trade Center Props., L.L.C. v. Hartford Fire Ins. Co., 345 F.3d 154, 165-66 (2d Cir. 2003). We may affirm on any basis supported by the record. Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 99 (1991); ACEquip Ltd. v. American Eng'g Corp., 315 F.3d 151, 155 (2d Cir. 2003). We assume the parties' familiarity with the underlying facts and procedural history.

Summary judgment for defendant was appropriate because plaintiffs have not established a prima facie case that TSAP has a disparate impact on Orthodox Jewish families. Title VII disparate impact analysis applies also to claims arising under the FHA. See Huntington Branch, NAACP v. Town of Huntington, 844 F.2d 926, 934 (2d Cir. 1988). "Under disparate impact analysis ... a prima facie case is established by a showing that the challenged practice of the defendant 'actually or predictably results in . . . discrimination; in other words that it has a discriminatory effect.'" Id. (quoting United States v. City of Black Jack, 508 F.2d 1179, 1184-85 (8th Cir. 1974)). "If a plaintiff makes a prima facie showing, the burden shifts to the defendant to prove that its actions furthered, in theory and in practice, a legitimate, bona fide governmental interest and that no alternative would serve that interest with less discriminatory effect." Tsombanidis v. West Haven Fire Dept., 352 F.3d 565, 575 (2d Cir. 2003) (internal quotation marks omitted).

In the present case, there was no evidence that Orthodox Jewish applicants are underrepresented even among new Williamsburg tenants. "The basis for a successful disparate impact claim involves a comparison between two groups—those affected and those unaffected by the facially neutral policy. This comparison must reveal that although neutral, the policy in

question imposes a 'significantly adverse or disproportionate impact' on a protected group of individuals." Tsombanidis, 352 F.3d at 575. Here, plaintiffs did not compare TSAP's effects on Jewish families with its effects on non-Jewish families. Further, the record contains evidence as to the percentages of Hasidic families that have moved into the Williamsburg developments since 1992. Defendants assert that evidence shows that between 1992 and 2006 approximately 4 percent of the families moving in were Hasidic, and that between 1998 and 2006 that number was nearly 5 percent. Plaintiffs, analyzing part of the evidence, assert that only 2.4 percent of the families moving into the Williamsburg developments since 1992 were Hasidic. However, since plaintiffs did not present evidence that Hasidic Jews make up more that 2.4 percent of the applicant pool, the dispute is not material, as plaintiffs have not shown that Hasidic Jews are underrepresented among new tenants in the Williamsburg developments.

Plaintiffs argue that even if 5 percent of new Williamsburg tenants are Hasidic, this represents a "stark decline." However, even if there were evidence of this, NYCHA had previously settled a lawsuit alleging that it had historically discriminated in favor of Hasidic families in the Williamsburg developments. See Williamsburg Fair Hous. Comm. v. New York City Hous. Auth., 450 F. Supp. 602 (S.D.N.Y. 1978). Indeed, plaintiffs acknowledge the "historic over-representation of Hasidic in the Williamsburg projects." (Pl.'s Br. at 30). Thus, a stark decline in the percentage of new Hasidic tenants would not necessarily be evidence of discrimination. This is why statistics are important. Tsombanidis, 352 F.3d at 575 ("[P]laintiffs are ordinarily required to include statistical evidence to show disparity in outcome between groups.") (citing Smith v. Xerox Corp., 196 F.3d 358, 365 (2d Cir. 1999)). To know whether TSAP has disparate impact on Hasidic Jews, we would need to know, at a minimum, the percentage of the approximately 80,000 people who apply for public housing each year that is Hasidic. Because plaintiffs have not provided this information, they failed to establish a prima facie case of discrimination.

Nor have plaintiffs established that they are entitled to an exemption from TSAP under the Free Exercise Clause. "[T]he right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religious prescribes (or proscribes)." Employment Division, Dep't of Human Resources v. Smith, 494 U.S. 872, 879 (1990) (internal quotation marks omitted). A "law that is neutral and of general applicability need not be justified by compelling governmental interests even if the law has the incidental effect of burdening a particular religious practice." Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 531 (1993).

In the present case, TSAP is facially neutral, making no reference to religious practice. Plaintiffs contend that TSAP is not generally applicable because defendant makes exceptions to its general policy of acting on a first-come, first-served basis for victims of domestic violence, those living in substandard housing, and others, while refusing to accommodate their religious needs. However, defendant grants exceptions only for specified categories, not on an ad hoc basis, and these exceptions are available to Hasidic Jews if they fall into one of those categories. Because TSAP is neutral and generally applicable, defendant need only demonstrate a rational basis for the plan. Defendant's stated reason for TSAP, "assur[ing] that it receives and processes applications for conventional public housing efficiently and in accordance with the laws," is a

rational basis for the plan.  Because TSAP is neutral, generally applicable, and has a rational basis, plaintiffs failed to establish a Free Exercise violation.

We have considered the plaintiffs' remaining arguments and conclude that they are without merit.  The judgment below is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk